```
                                      ┌─────────────────────────┐
                                      │      F I L E D           │
                                      │                          │
   IN THE UNITED STATES DISTRICT COURT│     JUL 2 5 2005         │
       FOR THE DISTRICT OF DELAWARE   │                          │
                                      │   U.S. DISTRICT COURT    │
                                      │   DISTRICT OF DELAWARE   │
                                      └─────────────────────────┘
```

UNITED STATES OF AMERICA            :
                                    :
            v.                      :     CRIMINAL NO. 04-00063-JPF
                                    :
THOMAS P. GORDON,                   :
SHERRY L. FREEBERY and              :
JANET K. SMITH                      :

### MEMORANDUM AND ORDER

Fullam, Sr. J.                                      July 25, 2005

On May 27, 2004, the grand jury returned a 47-page, 11-count Indictment charging the defendants Gordon and Freebery with RICO conspiracy, substantive RICO, and various related mail and wire fraud counts; and charging the defendant Janet Smith with obstructing justice.  The defendant Gordon was then the elected County Executive of New Castle County, and the defendant Freebery was his Chief Administrative Officer ("CAO").  The defendant Smith was an "executive assistant."  The Indictment was the culmination of an 18-month federal investigation into the operations of the government of New Castle County, Delaware.

The various counts of the Indictment relate to what the government describes as five separate "schemes"; (1) the "Election Scheme"; (2) the "Fieldstone Scheme"; (3) the "Harassment Scheme"; (4) the "Investigation Scheme"; and (5) the "Benefits Scheme."  The conspiracy count, Count I, includes all five of these schemes; the substantive RICO count sets forth five alleged racketeering acts, associated with some of these schemes.

Counts III and IV charge mail fraud in connection with the
Election Scheme; Counts V through VII charge mail and wire fraud
in connection with the Fieldstone Scheme; Count VIII charges wire
fraud in connection with the Benefits Scheme; Count IX charges
obstruction of justice against the defendant Smith only; and
Counts XI and XII charge the defendant Freebery alone with wire
fraud relating to certain mortgages she obtained.

The defendants filed numerous motions challenging
various portions of the Indictment, as well as motions for
severance and for change of venue.  Argument on these motions was
heard on May 4, 2005.  Two of these motions were disposed of, at
least temporarily, in the course of the argument, by Orders
entered at the conclusion of the hearing.  The remaining motions
will now be dealt with in this opinion.

OVERVIEW

The allegations of the Indictment may be summarized as
follows:

In 1994, the defendant Gordon was Chief of Police of
New Castle County, and the defendant Freebery was a supervising
official in the Police Department.  In that year, Freebery
required police officers to engage in political campaign
activities, in violation of state law.  In 1996, when the
defendant Gordon was a candidate for election as County

2

Executive, he and Ms. Freebery required police officers to engage in campaign activities in connection with that election.

After Gordon was elected County Executive, he appointed Freebery as his Chief Administrative Officer.  During the period from 1999 to 2002, they caused County employees to work in political campaigns, and used County resources in such campaigns, in connection with various elections for the office of County Council.

The defendant Freebery received a large sum of money from a friend (either as a gift or as a loan) and thereafter intervened to enable the friend to obtain a use and occupancy permit in connection with a golf-course project in which the friend had a financial interest.  Later, the defendants Gordon and Freebery tried to prevent public disclosure of that involvement.

The defendants Gordon and Freebery improperly caused County funds to be used to settle, in advance of suit, a threatened sex-discrimination/wrongful discharge lawsuit, and to cover up a related sex-scandal.  Also, the defendants Gordon and Freebery caused County funds to be used to hire private detectives to conduct surveillance of certain County employees, both during and after their working hours.

The defendant Freebery is charged with having made false statements to a lending institution in order to obtain

3

mortgage financing.  Finally, the defendant Smith is charged with
obstruction of justice for allegedly destroying records
pertaining to the use of County employees in election campaigns,
and also with having herself participated in some measure in
causing County employees to do political work during working
hours.

        The question to be decided is whether the facts alleged
in the Indictment, if proven at trial, would warrant conviction
of the federal crimes charged.  In analyzing this overarching
issue, it is helpful to begin with the substantive counts of mail
fraud and wire fraud, since they constitute the predicate acts
relied upon to support the RICO charges.

        In order to convict of mail or wire fraud, the
government must prove (1) that the defendants were knowingly
participating in a scheme to defraud, and (2) that the U.S. mails
or wire communication facilities were used in carrying out the
scheme.  This case involves so-called "honest services" fraud –
i.e., the charge that the defendants were engaged in one or more
schemes to deprive New Castle County and its citizens of the
honest services of public officials or employees.

        There is no longer any doubt that this kind of fraud
can support conviction under the mail/wire fraud statutes.
Although the Supreme Court had decided, in <u>McNally v. United
States</u>, 483 U.S. 350 (1987), that only schemes involving

4

deprivation of money or property were covered by the federal mail and wire fraud statutes, that decision was overruled when Congress amended the statute.

In the present context, where the federal government is prosecuting local officials for their acts or omissions in conducting the affairs of local government, considerations of federalism must be kept in mind.  While the federal government undoubtedly has the right to prosecute any person – local official or otherwise – for using the U.S. mails in the commission of a crime, the federal government does not have the right to exercise general supervisory authority over the conduct of state or local governments.  The mail/wire fraud statutes reach only violations of the citizens' right to the <u>honest</u> services of local officials.  Actions which are merely unwise or misguided cannot give rise to criminal liability in the federal courts.  There is, in short, an important distinction between conduct which can be regarded as causing a waste of taxpayers' money, and conduct which is equivalent to theft of taxpayers' money.  An element of venality is a prerequisite.

In the typical case, some sort of corruption is involved, such as bribery, extortion and the like.  This is not to say, however, that only typical scenarios fall within the statutory proscription.  But, as the reported cases make clear, the concept of "honest services" fraud should not be given a

5

reading which is too expansive (because of federalism concerns, and concerns about trivializing the federal statutes); but the precise limits are not easy to discern.

In its most recent decision on this subject, <u>United States v. Murphy</u>, 323 F.3d 102 (3d Cir. 2003), the Third Circuit held that a private citizen who was a political party chairman but not a public official could not properly be convicted of depriving a county of his own honest services.  In reaching that decision, the Court noted a strong preference for "the anchor of a fiduciary relationship established by state or federal law," but found it unnecessary to decide whether the obligation to provide honest services must be created by law in all cases.

In <u>United States v. Antico</u>, 275 F.3d 245 (3d Cir. 2001), the court upheld the conviction of a municipal employee who was in charge of enforcing various municipal codes, and who accepted gifts and services in exchange for ignoring violations. The court held that this conduct not only violated the extortion statute, but also constituted "honest services" fraud because the defendant exercised discretionary authority in matters in which he had a personal financial interest, without disclosing his conflict of interest.  Thus, it is clear that an express fraudulent misrepresentation is not essential; a mere failure to disclose a conflict of interest can suffice, particularly if disclosure is required by state law.

6

To the same effect is the case of <u>United States v. Panarella</u>, 277 F.3d 678 (3d Cir. 2002).  The defendant in that case paid a state senator for "consulting services" while the senator was voting favorably on matters directly affecting the defendant's business.  The defendant was convicted of being an accessory after the fact; his conviction depended upon whether the state senator committed honest services fraud.  The court stated "where a public official takes discretionary action that the official knows will directly benefit a financial interest that the official has concealed in violation of a state criminal law, that official has deprived the public of his honest services under 18 U.S.C. § 1346."  277 F.3d at 691.

The defendants have filed a remarkable number of pretrial motions - 17 in all.  I address first those motions which seek dismissal of various parts of the Indictment, principally for the reason that they fail to charge a crime.

As reflected in the Indictment, the government's theory is that the defendants were conducting the affairs of New Castle County through a pattern of racketeering activity.  The predicate acts of racketeering consisted of various instances of mail or wire fraud, through which the defendants defrauded the citizens of New Castle County of their right to honest services of the defendants and other County employees.  The Indictment specifies five different alleged fraudulent schemes.  Each will now be

7

addressed separately, to determine whether the alleged fraudulent
scheme could support a conviction for wire or mail fraud.

## I.   The Election Scheme(s)

The Indictment charges that from 1994 to late 2002, the
defendants caused various County employees to engage in partisan
political activity during working hours, in violation of state
law.   15 Del. C. § 8012(d)(2).   The government's theory is that
this caused resources of the County to be improperly diverted for
the benefit of particular political candidates.   If so, this
clearly could constitute "honest services" fraud.

## II.   The Fieldstone Project

A wealthy resident of New Castle County, identified in
the Indictment only by her initials, transferred a total of $2.3
million to the defendant Freebery, during the period from October
2000 to February 1, 2001.   When these transfers were completed,
the defendant Freebery executed a promissory note to the
benefactor.

The donor/lender of these funds was interested in
developing a golf course and country club on certain real estate
which she owned, and needed to obtain certain approvals from the
Land Use Department of the County.   A couple of months after the
financial transaction, the lender/benefactor left a telephone
message with a County employee, who in turn relayed it to the
defendant Freebery as an "SOS" to the effect that the benefactor

8

wanted Freebery's help in obtaining the necessary approvals for the Fieldstone Project. Thereafter, Freebery asked a County employee to find out why the project had not yet been approved, and to ask the Land Use Department to "work with" the Fieldstone Project. Some time later, the Fieldstone Project received its final use and occupancy permit.

The Indictment does not allege, and the government does not contend, that the $2.3 million transfer of funds to Freebery was made for the purpose of influencing her official actions, or that Freebery was in fact influenced by the financial transaction. Neither does the Indictment allege that Freebery had any financial interest in the Fieldstone Project. Thus, there is no contention that bribery or influence-peddling was involved. Rather, the government's theory is that Ms. Freebery was in a position of conflict-of-interest, and either should not have become involved in the approval of the Fieldstone Project in any way, or, at the very least, should first have publicly disclosed her conflict-of-interest. The difficulty with this theory, however, is that, on the facts alleged, Ms. Freebery did not have a conflict-of-interest, since she did not have a financial interest in the Fieldstone Project. Moreover, there is no allegation or suggestion that the Fieldstone Project should not have been approved. The facts alleged in the Indictment are

entirely consistent with the notion that Ms. Freebery was merely providing normal constituent service to a friend of hers.

The most that can be said is that Ms. Freebery's involvement possibly gave rise to an appearance of impropriety. But, in my view, that is not enough to support a criminal charge.

The Indictment further alleges that the defendants caused the County to incur legal expenses in attempting to prevent a local newspaper from disclosing the scandal in connection with the Fieldstone Project. Lawyers hired by the County threatened the newspaper with a possible lawsuit if they defamed any County official, and sought to defend a Freedom of Information Act lawsuit filed by the newspaper.

One may readily agree that, in retrospect, the defendants' litigation strategies were ill-advised, and Ms. Freebery may well have been motivated, at least in part, by a desire to shield her personal financial arrangements from public discussion, but the defendants were also acting in their official capacities in dealing with the press. The legal fees in question were not incurred solely for the benefit of the defendants. I have concluded that all of the allegations in the Indictment pertaining to the Fieldstone Scheme and the alleged coverup should be dismissed.

10

### III.   The Personal Benefits Scheme

The Indictment charges that the defendants caused a County employee, during working hours, to spend about 10 days painting Ms. Freebery's house and doing yard work at her premises; that in 2001 Ms. Freebery caused a County employee, during working hours, to decorate her benefactress's Christmas tree; and that, from time to time, County employees performed personal errands for Ms. Freebery while being paid by the County.

As to the defendant Freebery, these allegations, while relatively trivial, suffice to charge "honest services" fraud. And, since the Indictment charges, in general terms, that the defendant Gordon approved these activities, the "personal services" allegations suffice to charge both defendants with "honest services" fraud.

### IV.   The Private Investigation Scheme

The Indictment charges that the defendants caused the County to hire a firm of private investigators to conduct surveillance of certain County employees who were suspected of carrying out a clandestine affair during working hours.  While this might be regarded as a questionable management technique, it plainly does not qualify as a fraudulent scheme of any kind.  The allegations pertaining to this alleged scheme will therefore be dismissed.

11

## V.   The Sexual Harassment Scheme

In Count I of the Indictment (the RICO conspiracy count), one of the alleged fraudulent schemes is referred to as the "Sexual Harassment Scheme." It is alleged that a female County employee complained that she had been the victim of sexual harassment at the hands of another County employee. She either resigned or was fired (the Indictment does not specify which), consulted an attorney and threatened to sue the County for damages. She and her attorney were in possession of certain recorded telephone conversations among other County employees, including these defendants, which allegedly disclosed various other sexual improprieties among County employees, including the defendants. The lawyer asserted that, if it became necessary to file the lawsuit, it would "blow the lid off" the County government. The defendants thereupon caused the case to be settled for $260,000, caused a necessary transfer of funds between various County insurance accounts, and, allegedly, accomplished all this without notice to the County Council.

The reason for including these allegations in Count I, charging RICO conspiracy, is not immediately apparent. The Indictment does not charge the defendants with having committed any crime in connection with the "Sexual Harassment Scheme." The Indictment does not charge that any "predicate act" involved this scheme. There is no allegation that the mails or wire services

12

were used in connection with it.  As reflected in the
government's brief, the rationale seems to be that any and all
examples of questionable conduct is grist for the RICO mill.  I
disagree.

There is no assertion that either of the defendants was
responsible for the alleged sexual harassment, or was threatened
with suit in a personal capacity.  The most that can be said is
that the defendants caused a lawsuit to disappear, and that they
were motivated, at least in part, by a desire to avoid
potentially embarrassing disclosures.  Even assuming (although it
is not alleged) that their conduct violated state law (exceeding
their authority?; Sunshine Law violations?), there is no basis
for including these allegations in a federal indictment.  Any
reference to these events at trial would clearly violate Rule
404(b).  Paragraphs 30 through 43 will be stricken from the
Indictment as irrelevant and prejudicial.

## VI.  Fraudulent Loans

Counts IX and X of the Indictment charge the defendant
Freebery alone with having defrauded a lending institution in
connection with two mortgage loans she obtained.  In each of
these two instances, the mortgage proceeds were transferred by
wire interstate, and the government charges that Freebery
obtained these mortgages without disclosing to the lending
institution that she was indebted to her benefactor for $2.3

13

million.  None of the pending motions address the merits of these
counts, so I will assume, without deciding, that they validly
charge Ms. Freebery with wire fraud.  But it is obvious that
these counts should be severed from the remainder of the
Indictment.  Ms. Freebery's private mortgage transactions have
nothing whatever to do with her official position with New Castle
County, and the jury which tries the remainder of this Indictment
should not be tainted by whatever irregularities may have
attended Ms. Freebery's private mortgage deals.

### VII.  RICO Issues

#### A.  Identity of the "Enterprise"

The Indictment describes the enterprise for RICO
purposes as "New Castle County, its various departments and
offices, including the County Police and the Office of the County
Executive."  The defendants argue that, under the government's
"honest services" theories, they are charged with having deprived
the County of their honest services.  Citing Jaguar Cars, Inc. v.
Royal Oaks Motor Car Co., 46 F.3d 258, 267 (3d Cir. 1995 ), they
point out that the same entity cannot be both the enterprise and
the victim.  Assuming that to be correct, however, I believe the
Indictment can properly be read as charging the defendants with
having deprived the citizens of New Castle County, as well as the
County itself, of their honest services.  Moreover, we are not
concerned in this case with awarding civil damages, but with

14

assessing criminal liability.  I conclude that the Indictment
withstands dismissal on the ground asserted.

      B.  <u>"Pattern" of Racketeering Activities</u>

      The defendants contend that the predicate acts alleged
in the Indictment do not constitute a "pattern" because they are
not related to each other, continuous, etc. as required by such
decisions as <u>H.J., Inc. v. Northwestern Bell Telephone Co.</u>, 492
U.S. 229 (1989) and <u>Kehr Packages Inc. v. Fidelcor, Inc.</u>, 926
F.2d 1406, 1415-17 (3d Cir. 1991).  The defendants' argument
stresses the dissimilarities among the various schemes alleged.
In view of the conclusions expressed above, however, this
argument is largely mooted.  At least four of the specified
racketeering acts relate to the Election Scheme, and the
government is entitled to an opportunity to prove that they are
sufficiently related and continuous to pass muster.

      C.  Use of Mails or Wire Services
          <u>"In Furtherance of" Scheme to Defraud</u>

      Defendants argue that the facts set forth in the
Indictment do not demonstrate that the mails or wire services
were used "in furtherance of" the alleged scheme(s).  I conclude,
however, that the Indictment adequately <u>alleges</u> that the
mailings, etc., were in furtherance of the scheme(s), and that
further information is needed about each use of the mails or wire
services before a confident ruling on this issue can be made.

15

The reported decisions make clear that the government must show more than merely incidental use of the mails or wire communications facilities, or the use of such facilities "during" the existence of the fraudulent scheme.  <u>Kann v. United States</u>, 323 U.S. 88 (1944), <u>Parr v. United States</u>, 363 U.S. 370 (1960), <u>United States v. Maze</u>, 414 U.S. 395 (1974).  As stated by our Third Circuit Court of Appeals, the completion of the scheme or the prevention of its detection must be shown to depend in some way on the mailings in question.  <u>United States v. Cross</u>, 128 F.3d 145 (3d Cir. 1997).  But, whether the government will be able to sustain its burden at trial cannot be decided at this stage of the proceedings.

VII.   <u>Motion for Change of Venue</u>

The defendants Gordon and Freebery contend that it will be difficult to obtain an impartial jury in the District of Delaware, because of the extensive publicity this case has received in that District, much of it decidedly adverse to the defendants.  The motion is accompanied by copies of hundreds of newspaper articles and editorials, which strongly support the view that a substantial percentage of Delawarians are likely to have concluded that the defendants are guilty as charged.  The motion is further supported by a public opinion poll conducted by an expert, Mr. Jepsen.  On the basis of random sampling, Mr. Jepsen concludes that almost everyone in New Castle County has

16

heard about the case, and a substantial majority have already
formed opinions about it.

Having reviewed the newspaper articles in question, I
readily conclude that the transfer motion should be granted.  The
case can be tried in Philadelphia without undue inconvenience
(travel time from Wilmington to Philadelphia is in the range of
35 to 45 minutes).  The case has generated little or no publicity
in this District, and it is unlikely that any significant
difficulty in jury selection will arise if the case is tried
here.  The transfer motion will be granted.

## VIII.  Motion to Suppress Evidence

The defendant Freebery filed a motion to suppress
evidence which was obtained in a search of her residence,
pursuant to a duly-issued search warrant.  In essence, she
contends that the warrant was unnecessarily broad, and that the
officers conducting the search seized some evidence which was not
within the scope of the warrant.  I reject these arguments.
Moreover, as a practical matter, the motion to suppress has been
rendered moot by dismissal of the Fieldstone allegations;
evidence relating to the Election allegations were plainly within
the scope of the search warrant.

17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA        :
                                :
             v.                 :        CRIMINAL NO. 04-00063-JPF
                                :
THOMAS P. GORDON,               :
SHERRY L. FREEBERY and          :
JANET K. SMITH                  :

ORDER

AND NOW, this 25th day of July 2005, for the reasons set forth in the accompanying opinion, IT IS ORDERED:

1.  Counts V, VI, and VII of the Indictment are DISMISSED.

2.  All references to the alleged Fieldstone Scheme are STRICKEN from the Indictment.  (Paragraphs 16 through 29; and "Racketeering Act" No. 4).

3.  Counts X and XI are SEVERED, to be tried separately, if at all.

4.  Defendants' joint motion to compel production of transcripts of prosecutor's legal instructions to the grand jury is DENIED, the court having determined, after in camera review of portions of the transcript, that no useful purpose would be served in further exploration of this subject.

5.  Defendants' joint motion for a bill of particulars is DENIED without prejudice to renewal if the required information is not timely provided in advance of trial.

18

6.    Defendants' joint motion under Rule 16 is GRANTED, to the extent that, in the unlikely event that required discovery is withheld, defendants may file further motions on that subject.

7.    The motion of defendant Freebery to suppress evidence is DENIED.

8.    The motion of defendant Freebery to sever Counts IX-XI is GRANTED as to Counts X and XI, and DENIED as to Count IX.

9.    The defendants' motion for transfer of venue is GRANTED. Trial of this case shall take place in the Eastern District of Pennsylvania.

10.   Except as set forth above in this Order, all motions pending as of May 4, 2005 are DENIED.

BY THE COURT:

/s/ John P. Fullam
John P. Fullam, Sr. J.